**IN THE COURT OF APPEALS OF IOWA**

No. 15-2223
Filed July 6, 2017

**CHARLES JAMES DAVID OLIVER,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

Appeal from the Iowa District Court for Guthrie County, Paul R. Huscher, Judge.

An applicant appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

Angela L. Campbell and Gary D. Dickey of Dickey & Campbell Law Firm, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee State.

Heard by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, Presiding Judge.**

Charles Oliver appeals the district court's denial of his application for postconviction relief (PCR), following his conviction for third-degree sexual abuse, in violation of Iowa Code sections 709.1 and 709.4(2)(b) (2009). Specifically, Oliver claims his counsel was ineffective in failing to seek his accuser's mental-health and substance-abuse records and in failing to move to suppress recorded phone conversations. He also claims his right to a speedy trial was violated and he should be resentenced because there was a conflict in the available sentencing statutes. Because we find no reversible error, we affirm the denial of Oliver's application for PCR.

## I.    Background Facts and Proceedings

In 2010, Oliver was convicted of third-degree sexual abuse, in violation of Iowa Code sections 709.1 and 709.4(2)(b). Because Oliver stipulated that he had a prior conviction for third-degree sexual abuse, the trial court applied the class "A" felony enhancement under Iowa Code section 902.14 and subsequently sentenced Oliver to a life-without-parole term of imprisonment. Our supreme court affirmed Oliver's sentence on direct appeal. *State v. Oliver*, 812 N.W.2d 636, 654 (Iowa 2012).

On May 21, 2012, Oliver filed an application for postconviction relief, which he later amended. In his application, Oliver claimed his trial counsel was ineffective, his right to a speedy trial was violated, and the sentencing enhancement he received conflicts with another sentencing provision. After a hearing, the PCR court issued a ruling on December 8, 2015, that denied Oliver's application in its entirety.

Oliver appeals.

## II.     Scope and Standard of Review

Generally, we review challenges to rulings on applications for PCR for errors at law. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). "However, when the applicant asserts claims of a constitutional nature, our review is de novo." *Id.*

## III.     Ineffective Assistance of Counsel

Oliver claims that his trial counsel was ineffective. Specifically, Oliver claims his trial counsel was ineffective in failing to attempt to acquire his accuser's mental-health and substance-abuse records and in failing to move to suppress recordings of conversations Oliver had with his wife while he was in jail. The State disagrees.

"In order to succeed on a claim of ineffective assistance of counsel, a defendant must prove: (1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). Counsel's performance is measured "objectively by determining whether [it] was reasonable, under prevailing professional norms, considering all the circumstances." *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012) (alteration in original) (quoting *State v. Lyman*, 776 N.W.2d 865, 878 (Iowa 2010)). Additionally, "strategic decisions made after 'thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Ledezma*, 626 N.W.2d at 143 (quoting *Strickland v. Washington*, 466 U.S. 668, 690–91 (1984)). In assessing counsel's performance, we look to the totality of the circumstances. *Maxwell*, 743 N.W.2d at 196. To demonstrate prejudice, a claimant must show

"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "In determining whether this standard has been met, we must consider the totality of the evidence . . . ." *State v. Graves*, 668 N.W.2d 860, 882–83 (Iowa 2003).

### A.  Mental-Health and Substance-Abuse Records

At trial, Oliver claimed, contrary to his accuser's testimony, he did not have sex with the victim. Thus, Oliver contends his counsel should have attempted to acquire the mental-health and substance-abuse records of the accuser in order to impeach her credibility. At the PCR trial, trial counsel testified that while he was aware of some of the accuser's personal issues, he did not believe the records would be admissible because he did not believe he could make a connection between the accuser's issues and her truthfulness. When asked whether he could find an expert to make the connection, trial counsel said:

> I happen to deal with a great deal of bipolar and substance abuse in defending violent sexual offenders, I deal with some of the best experts there are, and I know they wouldn't say it. Unless the bipolar is so manic it could cause delusions, and there was no evidence of that . . . .

He also testified that raising seemingly unhelpful personal issues of an alleged victim can be "a two-edged sword" because the jury may turn against the defendant if the victim is seen to be vulnerable.

Based on our de novo review of the record, we conclude trial counsel did not breach an essential duty in not attempting to acquire his accuser's mental-health and substance-abuse records. Trial counsel testified that he was aware of potential evidence regarding the accuser's mental health and potential substance use, but he did not believe further investigation of those matters would lead to

admissible evidence that would be helpful to Oliver. Critically, the record shows trial counsel only had Oliver's vague allegations relating to a "panic attack" to rely on in assessing the relevance of potential mental-health issues suffered by the accuser. Under the legal standard in effect at the time of trial, trial counsel did not have a "reasonable basis to believe the records [were] likely to contain exculpatory evidence tending to create a reasonable doubt as to the defendant's guilt." *See State v. Cashen*, 789 N.W.2d 400, 408 (Iowa 2010), *superseded by statute*, Iowa Code § 622.10 (2011). Trial counsel was aware of the relevant facts and the applicable law and made a reasonable strategic decision not to pursue impeachment evidence based on the accuser's mental-health and substance-abuse records. Under these circumstances, Oliver has failed to show trial counsel breached an essential duty.

**B.    Recordings of Conversations Between Oliver and his Wife**

Oliver also asserts his counsel should have sought to exclude recordings of telephone calls between him and his wife while Oliver was in jail. In support, Oliver points to *State v. Cromer*, 765 N.W.2d 1 (Iowa 2009), to assert his admissions on the recordings were the product of coercion. The State contends the recordings here are distinguishable from those in *Cromer*.

In addressing this claim, the PCR court concluded trial counsel did not breach an essential duty and stated:

> The circumstances of this case vary markedly from those of *Cromer*. In *Cromer*, the telephone call occurred between the defendant and the alleged victim. The call was initiated by the alleged victim at the suggestion of the police. The police prepared the alleged victim for the call by suggesting the topics of

conversation, and two detectives were present and coached her during the conversation. When the conversation ebbed, the police prodded the alleged victim to keep talking.

In the present case, the applicant initiated each of the calls. The police took no part in suggesting the calls, coaching the applicant's wife, or suggesting the topics of conversation. The calls were recorded in accordance with routine jail practice, and both parties were aware of that fact. There is not a hint of police coercion in the calls made in this case. The calls in this case were not emotional and dramatic calls for justice by a complaining witness, nor were they mere lay opinions regarding whether the applicant's conduct amounted to the crime of sexual abuse in the third degree. This court finds that an objection to the introduction of the content of the phone calls between [Oliver] and [Oliver's wife] would have been without merit.

(citing *id.* at 4). We agree. There is no evidence of the coercion noted in *Cromer* nor any other reason the recordings should have been excluded. Thus, an objection would have been without merit, and trial counsel did not breach an essential duty in failing to object to admission of the recordings. *See State v. Tompkins*, 859 N.W.2d 631, 637–38 (Iowa 2015) ("Further, where a claimant alleges counsel's failure to pursue a particular course breached an essential duty, there is no such duty when the suggested course would have been meritless.").

## IV. Speedy Trial

Oliver asserts that his right to a speedy trial was violated because his waiver of the right was not voluntary, knowing, and intelligent.[1] Specifically, Oliver argues that he only waived his right because, after his original trial counsel

---

[1] It is unclear why this claim was brought in a PCR action and not on direct appeal. *See* Iowa Code § 822.8 (2009) ("Any ground finally adjudicated or not raised, or knowingly, voluntarily, and intelligently waived in the proceeding that resulted in the conviction or sentence, or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application . . . ."). Nonetheless, the district considered and ruled on the claim.

was substituted with new counsel from the State Public Defender's special defense unit, his new counsel needed more time to prepare for trial and pressured him to waive his right. The State contends Oliver's waiver was proper.

Article I, section 10 of the Iowa Constitution provides: "In all criminal prosecutions, and in cases involving the life, or liberty of an individual the accused shall have a right to a speedy and public trial by an impartial jury; . . . ." In conjunction with that right, Iowa Rule of Criminal Procedure 2.33(2)(b) states:

> If a defendant indicted for a public offense has not waived the defendant's right to a speedy trial the defendant must be brought to trial within 90 days after indictment is found or the court must order the indictment to be dismissed unless good cause to the contrary be shown.

A defendant may waive the right to a speedy trial, but the burden of showing waiver is on the State. *State v. Taylor*, 881 N.W.2d 72, 76, 79 (Iowa 2016). "[I]n order to waive speedy trial rights, the defendant must do so knowingly and intelligently." *Id.* at 79. We review the district court's waiver ruling for an abuse of discretion. *Id.* at 76.

After Oliver was charged by complaint and affidavit on April 8, 2010, he was appointed a contract attorney by the court on April 12. A trial information was filed on April 19 with arraignment set for May 16. After a supplemental trial information was filed on May 10, the charge against Oliver was elevated to a class "A" felony because of his prior conviction. Accordingly, Oliver's initial counsel withdrew, and new counsel from the State Public Defender's special defense unit, which handles all class "A" felonies, was appointed on May 17. At first, Oliver told his new attorney he was opposed to waiving his right to a speedy trial. Trial was initially set for July 14. However, on June 29, Oliver appeared in

court for the purpose of waiving his right. Oliver's counsel explained that he had discussed his inability to prepare for trial and mount a full defense of Oliver within such a short timeframe. He therefore had recommended Oliver waive his speedy trial right. The court then discussed the waiver with Oliver:

> The Court: And before we go forward with that, Mr. Oliver, have you had sufficient time to think about this?
> The Defendant: Yes.
> The Court: Have you had sufficient opportunity to talk with [trial counsel]?
> The Defendant: Yes. I talked to him when we were—before we came here.
> The Court: All right. And it is your—am I correct it is your wish to waive the 90 days so that you don't have to go to trial on—I believe it's the 14th?
> The Defendant: Yes.
> The Court: Very well.

Trial ultimately commenced on September 8.

Based on the facts and circumstances surrounding Oliver's waiver, we conclude the waiver was voluntary, knowing, and intelligent. Although Oliver opposed waiver initially, he reasoned, after consultation with his attorney, that additional time was necessary to fully prepare for trial and to investigate matters Oliver wanted his attorney to investigate. At the hearing, the trial court advised Oliver about his right, and Oliver indicated he understood the right, had fully discussed waiver with trial counsel, and wished to waive his right. Under these circumstances, we agree with the PCR court's conclusion Oliver waived his right voluntarily, knowingly, and intelligently.

V. **Sentence**

Oliver's final claim on appeal asserts there is a conflict between two sentencing provisions applicable to his conviction and he should not have been

sentenced to the life-without-parole enhancement.[2]   The State argues the statutes do not conflict and, even if they do, the provisions may be harmonized.

The State filed an amended trial information that elevated Oliver's charges from a class "C" felony to a class "A" felony based on Iowa Code section 902.14, which provides:

> 1. A person commits a class "A" felony if the person commits a second or subsequent offense involving any combination of the following offenses:
> a. Sexual abuse in the second degree in violation of section 709.3.
> *b. Sexual abuse in the third degree in violation of section 709.4.*
> c. Lascivious acts with a child in violation of section 709.8, subsection 1, paragraph "a" or "b."

(Emphasis added).   Oliver claims this section conflicts with Iowa Code section 901A.2(3), which provides:

> 3. Except as otherwise provided in subsection 5, a person convicted of a sexually predatory offense which is a felony, who has a prior conviction for a sexually predatory offense, shall be sentenced to and shall serve twice the maximum period of incarceration for the offense, or twenty-five years, whichever is greater, notwithstanding any other provision of the Code to the contrary.

Iowa Code section 901A.1(1)(a) partially defines "sexually predatory offense" as "[a] violation of any provision of chapter 709."  Oliver claims the "notwithstanding any other provision of the Code to the contrary" language of section 901A.2(3) supersedes section 902.14.

Initially, we agree with the PCR court the sentencing provisions conflict in the sense that it is conceivable that a person with multiple convictions of sexual

---

[2] Although this claim could have been raised on Oliver's direct appeal, "[a] defendant may challenge an illegal sentence at any time." *State v. Bruegger*, 773 N.W.2d 862, 869 (Iowa 2009).

abuse in the third degree, such as Oliver, could be sentenced under either provision. In harmonizing the two provisions, we note:

> It is a fundamental rule of statutory construction that where a general statute, if standing alone, would include the same matter as a special statute and thus conflict with it, the special statute will be considered an exception to or a qualification of the general statute and will prevail over it, whether it was passed before or after such general enactment.

*State v. Perry*, 440 N.W.2d 389, 390 (Iowa 1989). While both section 902.14 and section 901A.2(3) are specific in the sense they apply to specified offenses, 902.14 applies to a narrower category of offenses. Thus, we consider section 902.14 the more specific provision, and it prevails over conflicts with section 901A.2(3).[3] *See id.*

Relatedly, not only is section 902.14 applicable to a narrower category of offenses than section 901A.2(3), Oliver's proposed construction renders section 902.14 a nullity. Section 902.14 applies to second or subsequent offenses involving any combination of violations of sections 709.3, 709.4, and 709.8(1)(a) or (b). Section 901A.2(3) applies to a "person convicted of a sexually predatory offense which is a felony, who has a prior conviction for a sexually predatory offense." The code defines a "sexually predatory offense" to include any violation

---

[3] On Oliver's direct appeal, our supreme court noted this as well:

> There are fewer predicate crimes that make a defendant eligible for an enhanced punishment under section 902.14. Unlike section 901A.2, which includes "D" felonies and serious and aggravated misdemeanors as predicate offenses, the predicate offense under section 902.14 must be a "B" or "C" felony. *Compare id.* § 901A.2, *with* § 902.14(1). Also, only convictions and deferred judgments, as opposed to adjudications of delinquency, trigger section 902.14. Section 902.14 is not as broadly framed as 901A.2, and thus the scope of this statute generates less potential for gross disproportionality than section 901A.2. *See Bruegger*, 773 N.W.2d at 884.

*Oliver*, 812 N.W.2d at 652.

of chapter 709.  Thus, *every* offense that could be prosecuted pursuant to section 902.14 could also be prosecuted pursuant to section 901A.2(3).   Oliver's construction of the two statutes thus violates basic principles of statutory construction:

> S]tatute[s] should be construed as to give meaning to all of them, if this can be done, and each statute should be afforded a field of operation.  So, where the enactment of a series of statutes results in confusion and consequences which the legislature may not have contemplated, the courts must construe the statutes to reflect the obvious intent of the legislature and permit the practical application of the statutes.

*Judicial Branch v. Iowa Dist. Court*, 800 N.W.2d 569, 576–77 (Iowa 2011).

We also agree with the district court that Iowa Code section 4.8, which provides that the most recent statute prevails over an older statute if the statutes are seemingly irreconcilable, also supports the application of section 902.14. *See Dan Dugan Transp. Co. v. Worth Cty.,* 243 N.W.2d 655, 658 (Iowa 1976) ("Where, as here, subsequent legislation which comprehensively and specifically treats a matter included in a prior general statute results in an ambiguity or redundancy, the prior legislation is deemed repealed by implication.").  Because section 901A2.(3) was enacted in 1996 and section 902.14 was enacted nine years later, in 2005, the more recent code section prevails.  Accordingly, we conclude the enhancement under section 902.14 was properly applied to Oliver and the PCR court did not error in rejecting this claim.

**VI.    Conclusion**

Because we conclude Oliver has failed to show his trial counsel was ineffective, Oliver waived his right to a speedy trial, and he was sentenced under the proper code section, we affirm the PCR court's denial of his application.

**AFFIRMED.**